IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AGATHA M. RENDINA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JULANNE FALCO/RENDINA/ERICKSON, ) <br> MARK RENDINA, KIMBERLY BRYAN, ) <br> CHESHIRE PARKER SCHNEIDER BRYAN ) <br> & VITALE, and MITZI GARDNER, ) <br> ) <br> Defendants. ) | Civil Action No.: 05 C 7258 <br><br> Suzanne B. Conlon, Judge |

## **MEMORANDUM OPINION AND ORDER**

Agatha Rendina sues her son, Mark Rendina ("Mark"), her former daughter-in-law, Julanne Falco/Rendina/Erickson ("Erickson"), Erickson's divorce attorney, Kimberly W. Bryan, Bryan's law firm, Cheshire, Parker, Schneider Bryan & Vitale, and Mitzi Gardner, Bryan's paralegal, for violations of state and federal law stemming from a $43,000 loan. Rendina initially brought a fifteen-count complaint alleging state law claims. Erickson, Bryan, Cheshire, Parker, and Gardner moved to dismiss the complaint on jurisdictional grounds. Rendina then filed an amended complaint, changing the allegations of the parties' citizenship, and adding a new claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* In two separate motions, Erickson, Bryan, Cheshire, Parker, and Gardner now move to dismiss the amended complaint for lack of subject matter and personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and (2). For the reasons set forth below, the motions are granted.

## BACKGROUND

The following facts are derived from the amended complaint. In considering a motion to dismiss for want of jurisdiction, the court accepts all well-pleaded allegations as true unless controverted by affidavits. Any conflicts in the affidavits are resolved in plaintiff's favor. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987) (superceded by statute on other grounds). This family squabble stems from Rendina's $43,000 loan to Mark and Erickson. During their marriage, Mark and Erickson entered into a contract with Rendina for the loan. Am. Compl. at ¶ 30. At the time, the couple lived in North Carolina, but initiated frequent phone contacts with Rendina in Illinois. *Id.* at ¶ 26. Mark traveled to Illinois and accepted checks from Rendina. *Id.* at ¶ 28. Mark and Erickson separated in 2000, and were divorced in January 2002. *Id.* at ¶ 22. Erickson retained Bryan, a partner in Cheshire, Parker, and Gardner to represent her in the divorce. *Id.* at ¶ 32.

Mark and Erickson entered into a consent judgment for equitable distribution of their property. Am. Compl. at ¶ 37. The judgment provided, among other things, that Erickson pay Mark $17,000. *Id.* at ¶ 40. The terms of the judgment granted all equity in the marital residence to Mark. *Id.* at ¶ 38. Erickson was to cooperate in the listing and sale of the residence. *Id.* at ¶ 39. Rendina and Mark entered into a contract that he would repay a portion of Rendina's loan using the $17,000 received under the judgment. *Id.* at ¶ 41. After the divorce, Mark and Rendina entered into yet another contact to secure her interest in repayment of the loan, and Mark gave Rendina a promissory note and a deed of trust/second mortgage on the house. *Id.* at ¶ 56. Rendina continued to extend additional loans to Mark. *Id.* at ¶ 65.

This case arises from the alleged breach of the original loan contract and the repayment agreements. Rendina further alleges that Erickson, Bryan, Gardner, and Cheshire, Parker tortiously

interfered with these various contracts, preventing her from receiving payment. She asserts Erickson colluded with Bryan, Gardner, and Cheshire, Parker to prevent the sale of the marital property. Am. Compl. at ¶ 52. According to the amended complaint, Erickson refused to cooperate with the realtor, and prevented the prospective buyer from obtaining clear title. *Id.* at ¶ 154. As a result, the house was not sold. *Id.* at ¶¶ 115-19. Rendina claims actual damages of $83,000 and punitive damages of at least $100,000. *Id.* at ¶¶ 70, 73.

In support of jurisdiction, Rendina alleges (1) she is a resident of Illinois, Am. Compl. at ¶ 1; (2) Cheshire, Parker is a North Carolina law firm, *Id.* at ¶ 10; (3) all other defendants are North Carolina citizens, *Id.* at ¶¶ 5, 9, 11, 13; and (4) Erickson has transacted business in Illinois, she has an insurance agent in Illinois, her family is in Illinois and she travels to the state frequently. *Id.* at ¶¶ 15-17.

## DISCUSSION

### I. Legal Standard

A motion to dismiss under Rules 12(b)(1) and 12(b)(2) challenges the court's jurisdiction. Fed. R. Civ. P. 12(b)(1) and 12(b)(2). The court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in Rendina's favor. *Rueth v. United States Env't Prot. Agency*, 13 F.3d 227, 229 (7th Cir. 1993). In addition to the jurisdictional allegations in the complaint, the court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995); *Richmond ex rel. Liberty Institute Trust v. Nat'l Inst. of Certified Estate Planners*, No. 06 C 1032, 2006 WL 2375454, at *2 (N.D. Ill. August 15, 2006) (Manning, J.). Rendina bears the burden of establishing jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003);

3

*Richmond ex rel. Liberty Institute Trust*, No. 06 C 1032, 2006 WL 2375454, at *2 (citing *Turnock*, 816 F.2d at 333). A *pro se* complaint must be liberally construed, but even a *pro se* plaintiff must comply with jurisdictional pleading requirements. *Henderson v. Sheahan*, 196 F.3d 839, 845-46 (7th Cir. 1999); *see also Yellen v. State of Ill.*, No. 00 C 3342, 2000 WL 1016940, at *3 (N.D. Ill. July 20, 2000) (Conlon, J.) (dismissing *pro se* complaint for lack of jurisdiction).

## II. Federal Question Jurisdiction

Federal question jurisdiction under 28 U.S.C. § 1331 is unavailable unless the complaint standing alone establishes either that federal law creates the cause of action, or that a necessary element of plaintiff's claims is the resolution of a substantial, disputed question of federal law. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983). Mere incantation of a federal statute does not confer jurisdiction, rather the dispute must actually involve a "substantial question of federal law." *Minor v. Prudential Secs., Inc.*, 94 F.3d 1103, 1105 (7th Cir. 1996) (quoting *Franchise Tax Bd.*, 463 U.S. at 27-28).

To invoke federal question jurisdiction, Rendina amended her original complaint by adding a RICO claim. Am. Compl. at ¶¶ 231-37. The viability of Rendina's RICO claim turns on whether she can establish a pattern of racketeering activity, including at least two predicate acts of racketeering activity within a ten year period. *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 298 (7th Cir. 2003). Racketeering activity is any act indictable under specified provisions of the United States Code. *Id.* In a RICO action, the complaint, at a minimum, must describe the predicate acts with some specificity and state the time, place and content of the alleged communications perpetrating the fraud. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Allegations of fraud must be plead with particularity under Fed. R. Civ. P. 9(b). In a case

4

involving multiple defendants, the complaint should inform each defendant of the specific fraudulent acts constituting their alleged participation in the fraud. *Id.* at 778.

Rendina fails to plead her RICO claim with sufficient particularity. She alleges defendants threatened a witness and conspired to commit fraud. Am. Compl. at ¶¶ 232 and 234. She does not allege whether the unlawful conduct is in violation of § 1962. *Id.* at ¶¶ 231-37. Nor does she identify the misconduct of each defendant, or provide dates of predicate acts, beyond the vague assertion that the acts took place "on several occasions between May and August 2003." *Id.* at ¶¶ 232, 235. Rendina fails to make specific allegations explaining how the predicate acts are related to one another and pose a threat of continued criminal activity. *Id.* at ¶¶ 231-37; *Williams*, 351 F.3d at 298. Rendina also fails to adequately describe the RICO "enterprise" for each claim. *Id.* at ¶¶ 231-37. These allegations are insufficient.

Rendina's RICO claim appears to have been added in an attempt to invoke federal jurisdiction. *See Oak Park Trust & Sav. Bank v. Therkildsen*, 209 F.3d 648, 651 (7th Cir. 2000) (the district court lacked jurisdiction because plaintiff's RICO theory was a feeble, transparent "attempt to move a state-law dispute into federal court"). Similar attempts have been consistently thwarted where the alleged federal claim appears to be immaterial or frivolous, and made solely for the purpose of obtaining jurisdiction. *E.g., Bell v. Hood*, 327 U.S. 678, 682-83 (1946). "Family squabbles, such as this, are not the stuff of which federal jurisdiction is made, especially in the weighty atmosphere attendant RICO cases." *Jacobsohn v. Marks*, No. 92 C 6796, 1993 WL 513202, at *11 (N.D. Ill. Sept. 27, 1993) (Bobrick, M. J.) (dismissing a RICO claim against plaintiff's sons because the claim only amounted to a common law fraud claim). Rendina's RICO allegations do not give rise to federal jurisdiction under § 1331.

## III. Diversity Jurisdiction

In order to support federal jurisdiction, two requirements must be satisfied: (1) complete diversity of citizenship between the plaintiff and the defendants; and (2) the proper amount in controversy. 28 U.S.C. § 1332(a).

### A. Complete Diversity

Complete diversity means that no plaintiff may be a citizen of the same state as any defendant. *Fidelity & Deposit Co. of Md. v. Sheboygan Falls*, 713 F.2d 1261, 1264 (7th Cir 1983) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)). Residence and citizenship are not synonyms; parties must be citizens of a particular state for jurisdictional purposes. *Meyerson v. Harrah's E. Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002).

Rendina has established complete diversity. In her original complaint, she alleged that she and Mark reside in Illinois, Erickson is a "partial resident" of Illinois and North Carolina, Bryan and Gardner reside in North Carolina, and that Cheshire, Parker is a North Carolina law firm. Am. Compl. at ¶¶ 1-12. Rendina amended her original complaint to allege that Mark and Erickson are citizens of North Carolina. *Id.* at ¶¶ 5, 11. In her affidavit in response to Bryan, Cheshire, Parker, and Gardner's motion she clarified she is an Illinois citizen. Pl. Resp. (Bryan), Ex. A. She also filed an affidavit from Mark, averring his North Carolina citizenship. *Id.*, Ex. B.

Rendina's amendments to her allegations regarding Mark and Erickson's citizenship suggest they were changed for the purpose of invoking jurisdiction. But on a motion to dismiss, her allegations must be taken as true as movants have alleged no facts to dispute their truth. While Fed. R. Civ. P. 8(a)(1) requires the facts supporting jurisdiction to be alleged in the complaint, defective allegations of jurisdiction may be amended under 28 U.S.C. § 1653. Accordingly, the allegations in

the amended complaint, combined with Rendina's and Mark's affidavits, sufficiently establish complete diversity for purposes of § 1332(a). *See United Phosphorus, Ltd.*, 322 F.3d at 946 (the court may consider affidavits and other materials outside the pleadings).

### B. Amount in Controversy

In addition to complete diversity, the amount in controversy must exceed $75,000, exclusive of interest and costs, at the time the claim is filed. 28 U.S.C. § 1332(a). When challenged, a plaintiff must show that the rules of law, applied to the facts of the case, could produce the requisite amount. *Schlessinger v. Salimes*, 100 F.3d 519, 521 (7th Cir. 1996). A showing of the requisite amount requires competent proof: proof to a reasonable probability that jurisdiction exists. *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995).

Courts employ the "legal certainty" test to assess whether the amount in controversy satisfies § 1332. *Smith v. Am. Gen. Life & Accident Ins. Co., Inc.*, 337 F.3d 888, 892 (7th Cir. 2003). Under this test, courts will find federal jurisdiction on the basis of the complaint unless it appears "to a legal certainly that the claim is really for less than the jurisdictional amount." *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). If the court is satisfied to a legal certainty that plaintiff never was entitled to recover that amount and the claim was colorable for purposes of conferring jurisdiction, the claim will be dismissed. *St. Paul Mercury Indem. Co.*, 303 U.S. at 289.

Rendina alleges she suffered $83,000 in actual damages, and is entitled to at least $100,000 in punitive damages. Am. Compl. at ¶¶ 70, 73. Defendants have challenged this allegation. Therefore, Rendina must prove to a reasonable probability the aggregate value of her claims exceeds $75,000. *Rexford Rand Corp.*, 58 F.3d at 1218.

7

### (1) Actual Damages

Rendina's theory of her actual damages does not meet the jurisdictional minimum because it relies on double-counting to reach $83,000. A demand is legally inadequate for jurisdictional purposes when the theory of damages employs double-counting. *Johnson v. Wattenbarger*, 361 F.3d 991, 994 (7th Cir. 2004). Rendina alleges a total of $83,000 in damages. Am. Compl. at ¶ 70. This amount includes $43,000 for breach of the original loan agreement, $17,000 for claims regarding breach of the equitable distribution judgment, $11,000 for tortious interference with contracts to repay the loan, $8,000 for tortious interference with the promissory note and deed of trust, and $4,000 in additional damages incurred to defend her property rights. *Id.* at ¶ 70. It is undisputed that $43,000 represents the amount of the original loan. Rendina's additional damages are claims for a portion of the original loan amount. Rendina's interests in performance of the equitable distribution judgment, sale of the marital residence, and the promissory note and deed of trust from Mark are merely security for repayment of the original loan. Am. Compl. at ¶¶ 60-62. Her additional damages are not recoverable because they compensate the same loss: the amount of the original loan. A court would not grant double recovery of such damages. *E.E.O.C. v. Sidley Austin LLP*, 437 F.3d 695, 696 (7th Cir. 2006) ("courts can and should preclude double recovery by an individual") (citations omitted). Rendina's actual damages for purposes of jurisdiction are $47,000 ($43,000 for the original loan amount, plus $4,000 of "additional damages incurred to defend her property rights") and therefore do not satisfy the jurisdictional amount in controversy. *Id.* at ¶ 70.

### (2) Punitive Damages

Nor is the jurisdictional amount satisfied by Rendina's purported punitive damages. Rendina alleges she is entitled to recover at least $100,000 in punitive damages. Am. Compl. at ¶ 73. Where

punitive damages are required to satisfy the jurisdictional amount in a diversity case, a two-part inquiry is necessary. *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir. 2000). The first question is whether punitive damages are recoverable as a matter of state law; if the answer is yes, the court has subject matter jurisdiction unless it is clear to a reasonable certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount. *Id.* (citing *Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1211-12 (7th Cir. 1995)). When a claim for punitive damages makes up the bulk of the amount in controversy, and may even have been asserted solely to confer jurisdiction, courts should scrutinize that claim closely. *Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996).

As a general rule, Illinois law bars punitive damages for breach of contract. *Morrow v. L.A. Goldschmidt Assocs.*, 492 N.E.2d 181, 183 (Ill. 1986) (Goldenhersh, J., dissenting). Illinois courts have developed a limited exception to this rule to allow punitive damages to be awarded in contract cases where the defendant is also found to have committed an independent tort, separate from the breach of contract. *3Com Corp. v. Elec. Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 942 (N.D. Ill. 2000) (Moran, J.) (citing *Morrow*, 492 N.E.2d at 184)). Under this exception, a plaintiff may recover punitive damages when the breach amounts to an independent tort and there are proper allegations of malice, wantonness or oppression. *Morrow*, 492 N.E.2d at 183. But simply characterizing a breach of contract as 'wilful and wanton' does not change the fact that a plaintiff is only seeking harm to a contractual interest. A breach of contract does not become a tort just because it is wilful and wanton. *Id.* at 185.

As a general rule, Illinois law disfavors punitive damages. *Parks v. Wells Fargo Home Mortgage, Inc.*, 398 F.3d 937, 942 (7th Cir. 2005) (citing *Smith v. Prime Cable of Chicago*, 276 Ill.

App. 3d 843, 858 (Ill. App. 1st Dist. 1995)). Punitive damages are recoverable only "where the alleged misconduct is outrageous either because the acts are done with malice or an evil motive or because they are performed with a reckless indifference toward the rights of others." *Id.* The conduct must be so outrageous as to be similar to a crime. *Loitz v. Remington Arms Co., Inc.*, 563 N.E.2d 397, 415 (Ill. 1990). To meet her burden of producing "competent proof" of jurisdiction, Rendina must show that defendants' misconduct rises to this extreme level. *Rexford Rand Corp.*, 58 F.3d at 1218.

Rendina's multiple claims all boil down to an action for breach of contract to recover the original loan amount of $43,000. But she styles her contract claim as a tort claim, and alleges non-monetary damages in addition to economic losses. Am. Compl. at ¶ 72. While Rendina alleges that defendants benefitted from their actions, she does not allege they acted to further their own personal goals or to injure her, which is necessary to plead malice. *3Com Corp.*, 104 F. Supp. 2d at 938. Rendina fails to show by competent proof that Illinois law, applied to the facts of her case, could produce an award of punitive damages. Minute Order, Dkt. No. 31 (June 2, 2006) (quoting *Schlessinger*, 100 F.3d at 521). Rendina's allegations fall short of establishing to a reasonable probability that the aggregate value of her claims exceeds $75,000. *Rexford Rand Corp.*, 58 F.3d at 1218.

Rendina's allegations of defendants' malice and their criminal conduct fare no better. She repeatedly alleges defendants' conduct was "malicious," "intentional," and "willful," and that Erickson is under police investigation. *E.g.*, Am. Compl. at ¶ 6-7. These hyperbolic allegations lack basis and do not permit her to avoid the requirements of competent proof under *Rexford Rand. Corp.* Furthermore, while Rendina claims she is "permitted under Illinois law to recover punitive damages"

(Am. Compl. at ¶ 67), she fails to cite any Illinois cases to support her theory of punitive damages.[1] *Schlessinger*, 100 F.3d at 521. Accordingly, she fails to establish the jurisdictional amount required by § 1332(a). *Id.*

## IV. Personal Jurisdiction

Even if the court had subject matter jurisdiction over Rendina's claims, the court lacks personal jurisdiction over Erickson, Bryan, Cheshire, Parker, and Gardner. A federal district court in a diversity case may exercise personal jurisdiction over a nonresident defendant if jurisdiction over that defendant is proper under the law of the forum state. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); Fed. R. Civ. P. 4(e). Rendina bears the burden to establish personal jurisdiction. *RAR*, 107 F.3d at 1276. To that end, the court accepts all well-pleaded allegations in the complaint as true unless controverted by affidavit. *Turnock*, 816 F.2d at 333.

### A. General Personal Jurisdiction

Rendina has failed to allege this court has general personal jurisdiction over Erickson, Bryan, Cheshire, Parker, and Gardner. Under the Illinois Code of Civil Procedure, a defendant is subject to general personal jurisdiction in Illinois if the defendant was served in Illinois, is or was a resident of Illinois at the time of the occurrence, is a corporation organized under the laws of Illinois, or does business in Illinois. 735 ILCS 5/2-209(b). Erickson, Bryan, Cheshire, Parker, and Gardner were not served in Illinois. Bryan Mem. at 9; Aff. Service of Process (Erickson). Neither Erickson nor Gardner

---

[1] Rendina cites three cases from the Eighth Circuit for the proposition that the amount in controversy includes punitive damages. *See Allison v. Security Benefit Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992); *Visintine v. Saab Automotive A.B.*, 891 F. Supp. 496, 497 (E.D. Mo. 1995) (Gunn, J.), and *Asten v. Southwestern Bell Tel. Co.*, 914 F. Supp. 430, 433 (D. Kan. 1996) (Van Bebber, C.J.). Pl. Resp. (Bryan) at 6. Her reliance on these cases is misplaced because they do not interpret Illinois law.

11

lives in Illinois, and Cheshire, Parker is not organized under Illinois law. Am. Compl. at ¶¶ 14, 10. Nor do they do business in the state as contemplated by Illinois law. *See RAR, Inc.*, 107 F.3d at 1277 (general jurisdiction is permitted only where defendant has continuous and systematic general business contacts with the forum).

## B. Specific Personal Jurisdiction

Rendina has also failed to allege this court has specific personal jurisdiction over Erickson, Bryan, Cheshire, Parker, and Gardner. A nonresident individual may be sued in Illinois if (1) he performs one of the acts enumerated in the Illinois long arm statute, Ill. Rev. Stat. Ch. 110 § 2-209; and (2) the minimum contacts required by due process are present. *Turnock*, 816 F.2d at 333. If jurisdiction is not proper under the long arm statute, there is no need to consider whether the requirements of due process have been met. *Id.* To establish jurisdiction under the long arm statute, the plaintiff must allege jurisdictional facts that pertain to the cause of action. *Mott Corp. v. Montanya*, 491 N.E.2d 98, 99 (Ill. App. Ct. 1st Dist. 1986).

### (1) Illinois Long Arm Statute

#### a. Bryan, Gardner, and Cheshire, Parker

Rendina alleges that Bryan, Gardner, and Cheshire, Parker engaged in acts described in section two of the Illinois long arm statute. Pl. Resp. (Bryan) at ¶ 22. Section two provides jurisdiction as to any cause of action arising out of the commission of a tortious act within the state. 735 ILCS 5/2-209(a)(2). Rendina claims defendants committed repeated acts of tortious interference with contracts in Illinois. Pl. Resp. (Bryan) at ¶ 22. However, Rendina asserts no actions by Bryan, Cheshire, Parker or Gardner in Illinois. Bryan Reply at 5. Rendina allegedly suffered her injury in Illinois, but an economic injury, by itself, is too remote from the alleged misconduct to support a conclusion that a

12

tortious act was committed in Illinois. *Turnock*, 816 F.2d at 335. Absent allegations of any intent to affect Illinois interests, jurisdiction is not proper under the Illinois long arm statute. *Id.*

### b. Erickson

Nor does this court have personal jurisdiction over Erickson. The Illinois long arm statute provides that a person who commits any of the enumerated acts is subject to Illinois jurisdiction only if the cause of action arises from the act itself. 735 ILCS 5/2-209.

Rendina alleges Erickson engaged in acts described in several sections of the Illinois long arm statute. Pl. Resp. (Erickson) at ¶¶ 8-13. First, Rendina alleges that Erickson entered a contract (the original loan) substantially connected with Illinois under section 2-209(a)(7) of the long arm statute when she borrowed money from Rendina. *Id.* at ¶ 10. Second, Rendina alleges Erickson acquired ownership of a thing of value present within Illinois under section 2-209(a)(10) when she cashed Rendina's checks. *Id.* at ¶ 11. Third, Rendina alleges Erickson engaged in repeated tortious acts within Illinois under section 2-209(a)(2). *Id.* at ¶ 12. Finally, Rendina alleges Erickson transacted business within Illinois under section 2-209(a)(1) when Mark traveled to Illinois to pick up the checks for the loan on her behalf. *Id.* at ¶ 13. She also alleges that Erickson maintains a life insurance policy in Illinois. *Id.*

The loan contract was not substantially connected with Illinois. Aside from Mark traveling to Illinois and picking up checks, there were no written documents drafted or executed in Illinois, and there was no agreement that the loan would be governed by Illinois law, or repaid in Illinois. *See Continental Bank, N.A. v. Everett*, 964 F.2d 701, 702 (7th Cir. 1992) (district court had personal jurisdiction over guarantors of a loan under the Illinois long arm statute because the loan was governed by Illinois law, the loan and guaranty documents recited that they were delivered and executed in

13

Illinois, and the loan was to be repaid in Illinois). Rendina's cause of action does not arise from Mark's travel to Illinois to pick up the loan checks, or from ownership of the checks themselves. Nor does it arise from Erickson's alleged maintenance of a life insurance policy in Illinois. The only conduct that might arise in Illinois are Erickson's purported tortious acts. Yet Rendina has offered no allegations that Erickson's tortious acts took place in Illinois, other than the fact that Rendina's injury is in Illinois. As discussed above, under *Turnock* an economic injury, by itself, is too remote from the alleged misconduct to support a conclusion that a tortious act was committed in Illinois. *Turnock*, 816 F.2d at 335. Therefore, jurisdiction over Erickson is not proper under the Illinois long arm statute.

### (2) Due Process

Even if the movants were found to have committed acts under the Illinois long arm statute, Rendina has not established minimum contacts with Illinois. *Turnock*, 816 F.2d at 334. Due process requires minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts are "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Due process requires the court to consider whether a defendant's purposeful contacts were such that the defendant could reasonably expect to be haled into court. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Bryan and Gardner are North Carolina citizens and Cheshire, Parker is a North Carolina law firm. They claim to have never traveled or directed any communications to Illinois, and Rendina does not allege otherwise. Bryan Reply at 5. Rendina has not established that personal jurisdiction over

14

Bryan, Cheshire, Parker and Gardner conforms with federal due process requirements. Therefore, this court does not have personal jurisdiction over Bryan, Cheshire, Parker and Gardner.

Rendina argues that Erickson has sufficient minimum contacts with Illinois to satisfy due process requirements. She alleges that Erickson has transacted business in Illinois, she has an insurance agent in Illinois, her family is in Illinois and she travels to the state frequently. Am. Compl. at ¶¶ 15-17. These incidental contacts do not demonstrate Erickson purposefully availed herself of the privilege of conducting activities within Illinois, invoking the benefits and protections of its laws. *Burger King Corp.*, 471 U.S. at 475. Erickson could not reasonably expect to be haled into court, as required by federal due process. *Turnock*, 816 F.2d at 333; *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss the amended complaint are granted.

ENTER:

Suzanne B. Conlon
United States District Judge

September 5, 2006

15